

FILED
2020 MAY -8 PM 4: 42

UNITED STATES DISTRICT COURT

For the

Middle District of Florida

CARLOS M. DAVILA CARRASQUILLO

Case No. 6:20-cv-815-Orl-78GJK

Jury Trial: [ X ] Yes   [ ] No

-V-

UBER TECHNOLOGIES, INC &
CHECKR., INC

## COMPLAINT FOR CIVIL CASE

### I- NATURE OF THE CASE

1-This Civil action challenges Defendants' widespread violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-81x ("FCRA"), in employment background screening.

This case further challenges Defendants' widespread violations of Driver's Privacy Protection Act of 1994 (18 USC §§ 2721-2725 ; Social Security numbers are protected by concept of "informational privacy" and disclosure would be "unwarranted invasion of personal privacy" under 5 USC § 552 (b) (7) (C)];  Sec. 2721 - Prohibition on release and use of certain personal information from State motor vehicle records;  and 42 USCS § 408 (h) Social Security Act.

### II- JURISDICTION

2- This Court has subject matter jurisdiction under 28 U.S.C. § 1331, a case arising under United States Constitution or Federal Law or treaties is a FEDERAL QUESTION CASE.

3. This action arises under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-81x ("FCRA"), Driver's Privacy Protection Act of 1994 (18 USC §§ 2721-2725 ; Social Security numbers are protected by concept of "informational privacy" and disclosure would be "unwarranted invasion of personal privacy" under 5 USC § 552 (b) (7) (C)];  Sec. 2721 - Prohibition on release and use of certain personal information from State motor vehicle records; and 42 USCS § 408 (h) Social Security Act, which are federal statutes.

4. The Court has personal jurisdiction over Defendants because Defendant UBER TECHNOLOGIES, INC. ("Uber") has its principal place of business in this State at 382 NE

191st St, #74850, Miami, FL 33179, but their Main corporate address 1455 Market St. Suite 400, San Francisco, CA 94105 United States; More importantly Defendants advertised, and marketed products to Florida residents via the web: https://partners.uber.com/signup/Orlando : and via UberMilitary.com

5. Defendant CHECKR, INC., has its principal place of business in 1 Montgomery St. Suite 2400, San Francisco, CA, 94104. Defendants advertised, and marketed products to Florida residents via the web: https://candidale.checkr.com.

### III- VENUE

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1), because a substantial part of the events and omissions giving rise to Petitioner's claim occurred in this District. Plaintiff's choice of venue proper in the Middle District of Florida.

### IV- PARTIES

7. Plaintiff CARLOS MANUEL DAVILA CARRASQUILLO, is an Human Being, a private Citizen and a qualify Disable Veteran, Residing in Orlando, Florida.

8. Defendant UBER TECHNOLOGIES, INC. is a company that conducts business throughout the United States. Uber is a corporation organized under the laws of the state of Delaware with its principal place of business at in this State at 382 NE 191st St, #74850, Miami, FL 33179, but their Main corporate address 1455 Market St. Suite 400, San Francisco, CA 94105 United States; More importantly Defendants advertised, and marketed products to Florida residents via the web: https://partners.uber.com/signup/Orlando : and via UberMilitary.com

9. Defendant Checkr , Inc., is company organized under the laws of the state of California with its principal place of business at 1 Montgomery St. Suite 2400, San Francisco, CA, 94104.

10. At all times relevant hereto, Uber and Checkr, Inc, were users of consumer reports and therefore subject to regulation under 15 U.S.C. § 1681b, Cal. Civ. Code § 1785.20.5, Checkr, Inc, is a producer of such reports subject to regulation under the same laws.

### V- ALLEGATIONS REGARDING DEFENDANT'S BUSINESS PRACTICES

11. Congress has recognized consumer reporting agencies like Checkr, Inc have assumed a vital role in assembling information on consumers, and therefore implemented the FCRA to ensure credit reporting agencies "exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

12. In accordance with Congress' findings, a consumer reporting agency may only

2

furnish a consumer report for employment purposes if the user has certified its compliance with 15 U.S.C. § 1681b(b)(2)(A) before the report is furnished and certifies future compliance with 15 U.S.C. § 1681b(b)(3), if applicable. 15 U.S.C. §§ 1681b(b)(1)(A)(i)–(ii).

13. The certification requirement reads, in pertinent part:

> (1) Certification from user A consumer reporting agency may furnish a consumer report for employment purposes only if –
>
> (A) the person who obtains such report from the agency certifies to the agency that –
>
> (i) the person has complied with paragraph
>
> (2) with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable.
>
> 15 U.S.C. § 1681b(b)(1)(A)(i) (italics added).

14. A CRA that furnishes consumer reports used for employment purposes without receiving the requisite certification of FCRA compliance from the person obtaining the report is furnishing the consumer report unlawfully. 15 U.S.C. §§ 1681b(b)(1)(A)(i)-(ii).

15. Upon information and belief, Checkr, Inc furnished consumer reports to Uber, with knowledge that Uber used such consumer reports for employment purposes. *See Exhibit A*

16. However, Checkr, Inc., furnished the consumer reports to Uber through a web based portal used by Uber's clients, without requiring Uber's clients, who were actually obtaining and using the consumer reports, to certify compliance with 15 U.S.C. § 1681b(b)(2)(A) before furnishing the report or certifying future compliance with 15 U.S.C. § 1681b(b)(3), if applicable.

17. Checkr, Inc., similarly furnished consumer reports to other employers who were obtaining and using the consumer reports for employment purposes, without requiring them to certify compliance with 15 U.S.C. § 1681b(b)(2)(A) before furnishing the report or certifying future compliance with 15 U.S.C. § 1681b(b)(3), if applicable.

18. The paragraphs referenced in § 1681b(b)(1)(A)(i) are the stand-alone disclosure, written authorization and pre-adverse action notification requirements set forth in § 1681b(b)(2) and § 1681b(b)(3).

19. The purpose of the certification requirement is to ensure users of consumer reports for employment purposes follow the statutory framework Congress created to safeguard consumers' rights to privacy and information.

20. It is flatly illegal for a consumer reporting agency to furnish a consumer report for

3

employment purposes unless the consumer reporting agency has received the FCRA-mandated certification of compliance from the user. In fact, compliance with the certification requirement provides the only lawful means for a consumer reporting agency to furnish a consumer report for employment purposes. 15 U.S.C. § 1681b(a).

### VI- ALLEGATIONS SPECIFIC TO PLAINTIFFS

21. UBER TECHNOLOGIES, INC required that Plaintiffs sign documents titled Notice and Acknowledgement, purportedly authorizing Checkr, Inc, to procure their consumer reports for employment purposes. Defendants accept applications for employment as drivers via their website at partners.uber.com/drive.

22. In the course of its application, Uber presents drivers with the provision "By signing up, I agree to the Privacy Policy and understand that Uber is a request tool, not a transportation carrier." https://partners.uber.com/signup/Orlando.

23. Uber's application process comprises three steps. Step One requires that the applicant "Complete the FREE online background check: http://t.uber.com

24. The document contains language purporting to grant Defendants authorization on an ongoing and continual basis to access and re-access consumer reports at any time without further authorization of the applicant.

25. Step Two of the application process requires that the applicant upload certain personal information such as a driver's license, car registration, personal insurance documentation, and information about the applicant's vehicle.

26. Step Three requires that the applicant complete a 20-minute online quiz.

27. Uber online job application compel applicants to release their Social Security. Uber and Checkr, ignored The primary limitation contained in the federal 1974 Privacy Act, which requires that any agency requesting disclosure of a SSN must "inform that individual whether that disclosure is mandatory or voluntary, by what statutory or other authority such number is solicited, and what uses will be made of it" (Pub L 93-579, § 7, 88 Stat 1909.

28. Had Plaintiffs known that UBER TECHNOLOGIES, INC and Checkr. Inc, would violate the law in obtaining and using their background checks, Plaintiff never would have signed the authorization documents.

29. And because Checkr, Inc., never obtained Uber's certification of compliance with Section 1681b(b)(2), Defendant was not aware of any authorization from Plaintiffs to issue their reports to Checkr,Inc, at the time it did so.

30. On March 6, 2020, Plaintiff used Uber's web-based portal to obtain a contractor Driving Job position. Uber obtain Plaintiff's consumer report from Checkr, Inc. However, Uber never certified compliance with 15 U.S.C. § 1681b(b)(2)(A) or § 1681b(b)(3) before obtaining the consumer report from Checkr,Inc.

31. Checkr, Inc, furnished the consumer reports to Uber even though Uber had never certified compliance with 15 U.S.C. § 1681b(b)(2)(A) before obtaining the report or that it would comply with § 1681b(b)(3), if ever applicable.

32. Moreover, Uber could not have possibly certified compliance with § 1681b(b)(2)(A) because the Notice and Acknowledgement forms executed by Plaintiffs, supplied by Checkr, Inc, did not satisfy the requirements of § 1681b(b)(2). Thus, the purported disclosure was also unlawful.

33. Uber obtained Plaintiffs' consumer reports from Checkr, Inc , Checkr, obtained mush of Plaintiff private information from the Florida Motor Vehicle and used the reports for employment purposes.

34. Plaintiffs was denied on April 3, 2020 based upon the consumer reports Checkr, Inc unlawfully furnished to Uber. However, Plaintiffs were never provided pre-adverse action notification pursuant to § 1681b(b)(3), most likely because Uber never certified to Checker, Inc it would provide such notification, if applicable, before obtaining Plaintiffs' consumer reports.

35. In other words, Plaintiffs was not provided with the proper notice so that he learned of his rights to dispute any information in the reports or to otherwise discuss the information in those reports before Uber Rejected him, and had their consumer reports improperly accessed because Defendants failed to obtain the appropriate certifications from Uber. Such failure also caused an invasion of Plaintiffs' privacy, as Defendant released their consumer reports to Uber without having a statutory basis for doing so.

## VII- PLAINTIFFS' CONCRETE HARM

36. Checkr, Inc, unjustly enriched itself by unlawfully compiling Plaintiffs' personal, private and sensitive information and selling it without a permissible purpose. The

5

injury of "unjust enrichment" has its roots in English common law. Causes of action for unjust enrichment were part of "the traditional concern of the Courts at Westminster." Vt. Agency of Nat. Res. v. United States ex rel. Stevens, 529 US 765, 774 (2000)(quoting Coleman v. Miller, 307 U.S. 433, 460 (1939)).

37. Checkr, Inc, also violated Plaintiffs' right to privacy by compiling their personal, private and sensitive information into a consumer report and furnishing it to a third party, Uber, without a permissible purpose, since Checkr, Inc did not have the requisite certifications from Uber.

38. The FCRA's protections regarding who may obtain consumer reports and under what circumstances they may do so are real and substantive, not merely procedural. The violation alleged here is not some mere technical requirement—without the certification from Uber. Defendant Checkr, Inc, had no statutory permission to provide Uber with a report about Plaintiffs.

39. This improper issuance of a report harmed Plaintiffs by invading his privacy— Defendant Checkr, Inc., released Plaintiffs' private, personal information to Uber without a lawful reason for doing so.

40. Protection of consumer privacy is one well-recognized aspect of the FCRA, and the statutory provisions violated here have been part of the FCRA since its enactment in 1970.

41. Plaintiffs have a common-law right to keep their personal information from being distributed and used without his knowledge. Congress sought to enhance the protection of that right by enacting the FCRA and incorporating many consumer-oriented safeguards, which restrict the distribution of consumer reports only for the reasons listed "and no other." Indeed, the FCRA preempts the common-law tort of intrusion upon seclusion, and the FCRA expresses Congress' finding of "a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality and a respect for the consumer's right to privacy." 15 U.S.C. § 1681a(4).

42. Defendant invaded Plaintiffs' right to privacy when it provided their highly confidential personal information without a statutory basis for doing so.

43. Defendant's failure to obtain the appropriate authorizations from Uber injured Plaintiffs in that ;

6

(1) their privacy was unlawfully invaded by Defendant's provision of background reports about them without statutory permission.

(2) Plaintiffs suffered an informational injury—by not obtaining a proper disclosure of Uber's intent to obtain his consumer reports for employment purposes—because Defendant did not itself obtain the appropriate certification from Uber, that it would comply with the disclosure requirement of Section 1681b(b)(2);

(3) Plaintiffs were deprived of their ability to contest or discuss with Uber the contents of their consumer reports because Defendant did not obtain the proper certification from Naples that it would provide the appropriate notice to Plaintiffs if Uber chose to use the contents of his consumer reports as a basis to deny employment; and

(4) Defendant was unjustly enriched by selling Plaintiffs' consumer reports to Uber when Defendant had no statutory basis on which to release those reports to Uber.

44. The conduct that Defendants engaged in is precisely the type that Congress sought to prevent—protection of consumer privacy—with the restrictions it has imposed on access to consumers' sensitive, personal information.

45. Plaintiffs suffered a concrete, in-fact injury that is directly traceable to Defendant's conduct and that is likely to be redressed by a favorable decision here.

46. Checkr, Inc., violated Plaintiffs' right to privacy by compiling his personal, private, and confidential information into a consumer report without a permissible purpose and selling it for a profit to a third party.

47. Uber terminated Plaintiffs' employment based in whole or in part on the contents of the consumer reports, which Defendant Checkr, provided to Uber without a statutory basis for doing so. However, Uber never provided Plaintiffs with pre-adverse action notice, a copy of their consumer report or summary of rights. Again, it is not surprising Uber failed to satisfy the requirements of § 1681b(b)(3) since Uber never certified to Checkr, Inc., that it would comply with § 1681b(b)(3) before obtaining Plaintiffs' consumer report.

48. If Plaintiffs had known Checkr, Inc, was furnishing their consumer reports to Uber without a legal right to do so, Plaintiffs would not have permitted Checkr, Inc, to furnish their consumer reports to Uber.

49. If Plaintiffs had known Checkr, Inc was furnishing their consumer reports to Uber without a legal right to do so, and such consumer reports would be the basis for their termination, Plaintiffs would not have permitted Checkr, Inc to furnish their consumer reports to Uber.

50. If Plaintiffs knew Checkr, Inc, was profiting unlawfully from Plaintiff's consumer report, Plaintiffs would not have authorized Checkr, Inc to compile their personal, private and sensitive information for sale.

**VII- DEFENDANT ACTED WILLFULLY**

51. Defendant knew or should have known about its legal obligations under the FCRA. These obligations are well established in the statute's plain language, judicial decisions interpreting the Act, and in the Federal Trade Commission's and Consumer Financial Protection Bureau's promulgations.

52. Defendant obtained, or had available, substantial written materials, which apprised it of its duties under the FCRA.

53. Before CRAs provide consumer reports for employment purposes, they must obtain a written certification that the recipient has (a) provided the consumer with an FCRA compliant disclosure that a report will be sought; and (b) received that consumer's written authorization. Obabuecki v. Int'l Business Machines Corp., 145 F. Supp. 2d 371, 393 (S.D.N.Y. 2001).

54. This requirement has been part of the fabric of the FCRA since Congress enacted it. Defendant has had decades by which to become compliant with this requirement, yet it has not done so.

55. Discovery will show that Defendant has no process or procedure directed to compliance with the certification requirement, despite knowing of its existence.

56. Despite knowledge of these legal obligations, Defendant acted consciously in breaching its known duties and depriving the Plaintiffs' rights under the FCRA.

57. As a result of these FCRA violations, Defendant is liable to Plaintiffs for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), for the violations alleged herein, and for attorney's fees and costs pursuant to § 1681n and § 1681o

## VIII- PLAINTIFF'S STATEMENT TO STATE CAUSE OF ACTION
### FIRST :CAUSE OF ACTION
Failure to Obtain Certification Prior to Furnishing a Consumer Report
for Employment Purposes in Violation of 15 U.S.C. § 1681b(b)(1)(A)
(Against Uber and Checkr on behalf of Plaintiff)

58. Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

59. Checker, Inc., willfully violated 15 U.S.C. § 1681b(b)(1)(A) because it provided consumer reports about Plaintiffs, which were used for employment purposes, without the user's certification of compliance with the disclosure, authorization and notification requirements set forth in 15 U.S.C. § 1681b(b)(2) and § 1681b(b)(3).

60. Checker, Inc., invaded Plaintiffs' privacy by compiling Plaintiffs' personal, private and sensitive information into a consumer report for employment purposes, and furnishing said consumer reports without a permissible purpose.

61. Uber, caused Plaintiffs injury because the reports Checkr, Inc, furnished was used, in whole or in part, as the basis for an adverse employment action.

62. Uber., caused Plaintiffs injury because Checkr, Inc, permitted the user of their consumer reports to circumvent the disclosure, authorization and notification requirements of the FCRA when using consumer reports for employment purposes by failing to require Uber to certify compliance therewith.

63. The forgoing violations were willful. At the time Checkr, Inc, violated 15 U.S.C. § 1681b(b)(1)(A), Checker, Inc., knew it was required to obtain certification of compliance with 15 U.S.C. § 1681b(b)(2) from Uber before furnishing Uber with consumer reports for employment purposes and certification with the notification requirements of 15 U.S.C. § 1681b(b)(3), if applicable. Checker, Inc.,'s willful conduct is also reflected by, among other things, the following facts:

    a. Checker, Inc., knew of potential FCRA liability;

    b. Checker, Inc., is a consumer reporting agency with access to legal advice through their own general counsel's office and outside employment counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful.

    c. The FCRA's certification requirement is clearly spelled out in the plain

language of the statute.

d. Checker, Inc., knew or had reason to know that their conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

e Checker, Inc., voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

64. The Plaintiffs is entitled to statutory damages of not less than one hundred dollars ($100) and not more than one thousand dollars ($1,000) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

65. The Plaintiffs is further entitled to recover his costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

## SECOND: CAUSE OF ACTION
### Violation of the FCRA, 15 U.S.C. § 1681b(b)
### (Against Uber and Checkr on behalf of Plaintiff)

66. Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

67. Defendants used a "consumer report," as defined by the FCRA, to take adverse employment action against Plaintiff.

68. Defendants violated the FCRA by failing to acquire from Plaintiff proper authorization prior to conducting the background check and/or did not utilize an authorization with the requisite statutory requirements.

69. Defendants violated the FCRA by failing to provide notice to Plaintiff and other Class members with a conspicuous disclosure that Defendants would procure a consumer report for employment purposes, in a document that consists solely of the disclosure, as required by 15 U.S.C. § 1681b(b)(2)(A).

70. Defendants further violated the FCRA by failing to provide Plaintiff and other putative Class members, prior to taking adverse action, with notice that adverse action would be taken in whole or in part based on a consumer report.

71. Defendants violated the FCRA by taking adverse employment action based upon information contained within applicants' and/or employees' consumer reports without providing copies of such report to the applicants or employees.

72. The foregoing violations were willful. Defendants acted in deliberate or reckless disregard of their obligations and the rights of Plaintiff under 15 U.S.C. § 1681b(b)(3)(A). The willfulness of Defendants' conduct is reflected by, among other things, the following facts:

    a. Based on the plain language of the statute, legal advice provided by its own general counsel, or outside employment counsel, and published FTC guidance, Defendants knew or should have known that its failure to provide compliant pre-adverse actions notice was unlawful;

    b. Based on published FTC guidance, Defendants knew or should have known that its choice to consider itself exempt from the provisions of the FCRA because they believe themselves to utilize independent contractors and not employees was unlawful.

    c. Defendants could have complied with the statutory duty to provide a pre-adverse action notice either by sending the notice directly to the affected consumer job applicant, or by contracting with Checkr to do so on its behalf;

    d. Despite the clear notice of the law, full ability to comply, and ample opportunity to do so, Defendants failed to adopt any measure or mechanism which would have provided the required notice to Plaintiff.

73. Plaintiff is entitled to actual damages or statutory damages of not less than $100.00 and not more than $1,000.00 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

74. Plaintiff entitled to recover the costs and attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3).

### THIRD CAUSE OF ACTION
### Violation of the CCRAA, Cal. Civ. Code § 1785.1 et seq.
### (Against Uber and Checkr by Plaintiff)

75. Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

76. Defendants used a "consumer credit report" as defined in Cal. Civ. Code § 1785.3 to take adverse employment action against Plaintiff.

77. Defendants violated the CCRAA by failing to provide written notice to Plaintiff, prior to requesting such consumer credit reports, that complied with Cal. Civ. Code § 1785.20.5 by informing Plaintiff the specific basis under subdivision (a) of Section 1024.5 of the Labor Code

for use of the reports, informing him of the source of the reports, and including a box that such persons could check off to receive copies of such reports.

78. The foregoing violations were willful. Defendants acted in deliberate or reckless disregard of their obligations and the rights of Plaintiff under the CCRAA.

79. Plaintiff is entitled to:

    a. Any actual damages sustained by Plaintiff as a result of the failure.

    b. Punitive damages of not less than one hundred dollars ($100) nor more than five thousand dollars ($5,000) for each violation as the Court deems proper.

    c. Injunctive relief requiring Defendants to comply with the FCRA and CCRAA; and

    d. Costs and reasonable attorney's fees.

### FOURTH CAUSE OF ACTION

Violation of the Driver's Privacy Protection Act of 1994 (18 USC §§ 2721-2725 ; "informational privacy" disclosure would be "unwarranted invasion of personal privacy" under 5 USC § 552 (b) (7) (C)]; Violation of Sec. 2721 - Prohibition on release and use of certain personal information from State motor vehicle records; and Violation of 42 USCS § 408 (h) Social Security Act.
(Against Uber and Checkr by Plaintiff)

80. Plaintiff incorporates by reference and re-alleges the preceding paragraphs.

81. Defendants compel and induced Petitioner to release his Social Security number and his Florida Driver License using extreme psychologically trickery by way of some operative force by way of an Internet Job Application. Defendants, has programed their web page **www.uber.com**/us/en/drive/orlando and or UberMILITARY, in such a way that if the applicant refuse to share his Social Security Number or Driver License Number the page would not allow applicants to continue.

82. Upon information and belief Defendants "consumer credit report" was obtained in Violation of the Driver's Privacy Protection Act of 1994 (18 USC §§ 2721-2725 ; because the report use private information such as Social Security numbers that are protected by concept of "informational privacy" and disclosure would be "unwarranted invasion of personal privacy" under 5 USC § 552 (b) (7) (C)]; Violation of 18 USC § 2721- Prohibition on release and use of certain personal information from State motor vehicle records; and Violation of 42 USCS § 408

12

(h) Social Security Act, is a criminal Act : "Whoever... (h) discloses, uses, or compel the disclosure of the Social Security number of any person in violation of the law of the United States; Shall by guilty of a Felony and upon conviction thereof be fine not more than $5,000 or imprisoned for not more than five years or both.

83. The primary limitation is contained in the federal 1974 Privacy Act, which requires that any agency requesting disclosure of a SSN must "inform that individual whether that disclosure is mandatory or voluntary, by what statutory or other authority such number is solicited, and what uses will be made of it" (Pub L 93-579, § 7, 88 Stat 1909.

84. The foregoing violations were willful Defendants acted in deliberate or reckless disregard of their obligations and the rights of Plaintiff "information privacy".

85. Plaintiff is entitled to:
> a. Any actual damages sustained by Plaintiff as a result of the failure..
> b. Punitive damages of not less than one Million Dollars for unwarranted invasion of personal privacy
> c. Injunctive relief requiring Defendants to comply with Driver's Privacy Protection Act of 1994 (18 USC §§ 2721-2725 ;and 42 USCS § 408 (h)
> d. Plaintiff charge Uber and Checkr , individually of committing a Felony and upon conviction thereof be fine not more than $5,000 each.

## IX- RELIEF

**WHEREFORE,** Plaintiff, prays for relief as follows:

A. For an order requiring Defendants to pay actual damages in an amount to be determined at trial;

B. For an award of statutory damages on the First Cause of Action in an amount not less than $100 and not more than $1,000 per violation.

C. For the Second and Third Cause of Action for punitive damages an amount to be determined at trial

D . As per the Fourth Cause of Action for an award.
> a)Punitive damages of not less than one Million Dollars for unwarranted invasion of personal privacy
> c. Injunctive relief requiring Defendants to comply with Driver's Privacy Protection Act of 1994 (18 USC §§ 2721-2725 ;and 42 USCS § 408 (h)

      d. Plaintiff charge Uber and Checkr , individually of committing a Felony and upon conviction thereof be fine not more than $5,000 each.

E. For an order prohibiting Defendant from engaging in the misconduct described herein and requiring Defendants to provide proper disclosures and information as required under 15 U.S.C. §§ 1681b(b)(2) and 1681b(b)(3) and under the CCRAA;

F. For an award of attorneys' fees;

G. For an award of the costs of suit incurred herein, including expert witness fees;

H. For an award of interest, including prejudgment interest, at the legal rate; and

I. For such other and further relief as this Court deems just and proper.

## X- DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all claims so triable.

Dated: May 5, 2020

Respectfully submitted

*[signature]*

Carlos M. Davila Carrasquillo
Pro-se Litigant
10637 Bastille Ln. Apt. 104
Orlando, Florida 32836
Cell Phone: 407-874-2088
Email: cmd.640155@gmail.com